Hillsborough, ⎱
Jan. 7, 1913. ⎰

## FERRYALL v. YOULDEN.

Where the declaration in an action for personal injuries alleges that the defendant was negligent in driving upon a highway with an unsafe horse, his knowledge and understanding of the nature and character of the horse are material; and upon this issue testimony as to statements made by the defendant's vendor at the time the animal was purchased is admissible.

In the absence of contrary evidence, it is to be presumed that the use of competent and material testimony was limited to a legitimate purpose.

CASE, for personal injuries. Trial by jury and verdict for the defendant. Transferred from the May term, 1912, of the superior court by *Mitchell, J.*

While the plaintiff and the defendant were driving in the same direction upon a public highway in Hudson, the defendant's horse ran into the rear of the carriage in which the plaintiff was riding, and as a result of the collision the plaintiff was thrown out and injured. Among other things, the plaintiff's evidence tended to prove that the horse driven by the defendant was unsafe.

The declaration was as follows: "In a plea of the case, for that the plaintiff says that on the 11th day of April, 1909, he was riding in a northerly direction along the highway leading from said Hudson to Litchfield in said county, in an open buggy, drawn by one horse, at a point in said Hudson near the farm of William H. Youlden, and was then and there in the exercise of due care; that while he was so riding at said point, a horse owned and driven by the defendant, and attached to a wagon, approached the plaintiff suddenly from the rear and ran violently into and upon the wagon in

which the plaintiff was then and there riding; that said horse of said defendant was then and there running away; that by reason of the defendant's negligence in driving said horse upon the public highway, and by reason of the negligent and careless manner in which the defendant was then and there driving said horse, the wagon in which the plaintiff was riding was overturned, and the plaintiff was thrown violently to the ground, two of his ribs on his left side were broken, his heart was injured, he suffered a severe nervous and mental shock, and has suffered and still does suffer great pain, and has been put to great expense for medical attendance and nursing, and by reason thereof has been unable and will always be unable to do severe manual labor."

The defendant was called as a witness by the plaintiff and in response to inquiries testified that he did not try out the horse before he traded, but took the vendor's word that the animal was safe; that after making the purchase and before the accident he drove the horse five or six times, but noticed nothing unsafe about him. Later in the trial the defendant was called as a witness in his own behalf and was permitted to testify as follows, subject to the plaintiff's exception as set forth below:

Q. "And you stated you got this horse from Mr. Bailey of Acton?" A. "Yes."

Q. "Where was it you first saw this Bailey horse?" A. "At West Acton."

Q. "And on what day was that?" A. "Why, it was one or two days before we exchanged horses, and we exchanged on the Monday before the Sunday the accident happened."

Q. "And did you drive the horse at that time?" A. "No. He met me at the depot with the horse, and drove me to his house and introduced me to his wife, and said his wife drove this horse."

Mr. Doyle. "We object to this conversation."

Court. "You charge that the horse was an unfit horse, or such that he had notice of its unfitness and unsafety."

Mr. Spring. "That goes in subject to our exception."

Mr. Moran. "What was your answer to that?" A. "That he drove me up to the house and introduced his wife and stated his wife drove this horse, and she said she did and thought a good deal of him and hated to part with him, and she said Mr. Bailey—"

Mr. Doyle. "This all goes in subject to our exception."

Mr. Moran. "Nothing only about the horse." A. "That was about all said at that time. We put the horse in the barn. His

wife took another rig to go down town and meet her cousin, and he kept the horse there and showed me the horse under the saddle. When his wife went he took the horse out and put a saddle on. There was a young man working for him; he jumped on and went up the road three or four times to show me how he could drive under the saddle. I never saw a horse I liked the looks of better. At train-time he took me back to the depot with the same horse, and I couldn't see anything wrong with the horse at all. I said, Mr. Bailey, you come over tomorrow."

Q. "Were there any further representations, other than you have stated, about this horse as to its suitability or safety?" A. "Except he [Bailey] made it pretty strong at the dinner table, and when we got to the depot he made it pretty strong, as to its being a safe and clever horse—clever like."

*Hamblett & Spring* and *Doyle & Lucier* (*Mr. Spring* orally), for the plaintiff.

*Wason & Moran* (*Mr. Moran* orally), for the defendant.

BINGHAM, J. The declaration charges the defendant with negligence (1) in the manner in which he drove the horse upon the highway at the time of the accident and (2) in the fact that he drove the horse upon the highway. As bearing upon the latter charge, the defendant's knowledge and understanding of the nature and character of the horse was material. *Connolly* v. *Brown,* 73 N. H. 193. If he understood the horse was safe and kind and had been driven by a woman, evidence of that sort would tend to show that he was in the exercise of due care in attempting to drive the horse in the public streets. What the vendor told the defendant when he purchased the horse a short time before the accident was not competent to prove the nature or character of the horse, but was competent to prove what the defendant understood the nature and character of the animal was and whether he was in the exercise of due care in driving him. There is nothing in the case indicating that the evidence was used for an improper purpose; and being competent for one purpose, the presumption is that its use was limited to that purpose.

*Exceptions overruled.*

All concurred.